Good morning, Your Honors, and may it please the Court. The issues before the Court today focus on two claim limitations, which we have called the arcuate channel limitation and the means for releasably preventing. The record shows that WG got samples of SENSORMATIC system and its goal was to, in its own words, have a direct super tag equivalent. We submit that it succeeded in that effort, although WG argues that neither limitation covers its tags and nor over that there's substantial evidence to support the jury verdict. The District Court issued only a one-page opinion, which has no reasoning that will edify us in terms of what the Court was thinking in denying the JMO and new trial motions, but we submit it's clear from the record that the JMO motion and or the new trial motion should have been granted. So let me talk about the arcuate channel first. The party stipulated to the meaning of this phrase, and the stipulation was, it has to be capable of, capable of, or suitable for receiving and guiding the arcuate probe to the preventing means. I submit you don't need to go much beyond the testimony of WG's expert to see that this phrase covers the WG tags. What did he say? Stamper was his name. He said WG's tags contain a curved path or channel from the outside of the tag to the preventing means, that the curved path or channel in WG's tags prevents a straight probe from detaching the tab, which is one of the main purposes of the arcuate channel and the arcuate probe. He said WG's tags contain structure, walls, posts, etc. that limit where the arcuate probe could possibly go. And he says the arcuate channel in WG's probe tags receives an arcuate probe and then finally that at least in some instances, insertion of an arcuate probe into the arcuate channel in WG's tags will come in contact with the wall in the tags. Given these admissions, I would think there shouldn't be, there wouldn't be any dispute on whether the arcuate channel limitation was met. He left out at least one other thing that he did also testify to, which is that the internal structure does not define a curved path. That's the case, right? I mean, if the jury agreed with him, believed him, that the internal structure did not define a curved path, that's the basis for a jury verdict, right? Your Honor, what he said was that it doesn't provide a curved path which guides. His testimony on 205-0 to 205-1 was that it does contain a curved path. He says it doesn't guide to take you through the, to the- Guide is a word in the claims. Pardon? Guide is a word in the claims. Your Honor, but his testimony was based on his interpretation of the claim as calling for actual guiding. The claim doesn't say, and his testimony was actual guiding. The testimony, the claim doesn't require actual guiding. It merely requires capability of guiding. And we submit that there is no testimony suggesting that it's not capable of guiding. Let's look at what his evidence was. His evidence was three things. His evidence was one, that he used the detacher mechanism, the gun, so to speak, and which is designed to, to guide it itself. And, and he admitted that doesn't prove anything. His words were that doesn't determine the end result. His second test was a single test in which he said it didn't meet the preventing means. I submit that the test is not whether one test without any evidence of any effort to try to meet the preventing means proves anything. The Hargrave test which we cite, the Hargrave case which we cite, says the test of infringement is not capability, it's reasonable capability. The evidence was there were 50 efforts for a beamer who was the sensorimatic expert, successfully reaching the goal. He noted that there were occasions when he had to move it around to hit the walls. And those walls are what is capable of guiding means. Those walls and posts and what have you help you reach the promised land. If you look at page 16 of the red brief, which is their, WG's brief. If you look at the picture of the tags, which was the third thing he relied on, you will see that there are posts or walls guiding that probe. You may, there may be a little play. This isn't a perfect precision fit. It's a guide. That's all it is, it's a guide. And I submit that the conclusion that you have referred to, Judge Proust, is a conclusion which is totally inconsistent with all of the evidence. There is no evidence, I say no evidence, that even less than substantial, which proves their case. They attempted to have a claim construction in which the construction included a series of walls going from the entranceway to the preventing means. The district court declined that suggested attempt. That attempt was expressly characterized as one to prevent straying and to make sure you hit it every time. He refused that. So then you were left with a question of fact as to whether the walls of the tag body of the accused device constituted an accurate channel being adapted to receive and guide an arcuate probe, right? Isn't that a question of fact? It is a question of fact, but the issue today, Your Honor, is whether there's substantial evidence on the side of WG to support that. And what I've just gone through is every piece of evidence that they have relied on. And my answer is that that is not substantial evidence. It is true, the ultimate question is one of fact, but there needs to be evidence to support that fact, and there isn't. What they're trying to do is, they're trying to resuscitate the claim construction, which they're unsuccessful in getting Judge Ward to accept, because that claim construction would have prevented any play, it would have prevented any straying. So I suggest that there is no substantial evidence to support their view, and that, in fact, Jamal and or a new trial should be granted on that issue. I take it you disagree with Judge Prost's suggestion that the evidence in support of one side or the other could be simply the difference in the structure between the two tag bodies, is that right? You don't think the structure- It could be. It could be. It could be. And that's why I referred to page 16 of the- But the two tag bodies were indeed, or the claim and their accused tag body were in evidence. That is true, your honor. But we need- If the jury wanted to believe their tag body did not meet that limitation, what's to keep the jury from believing that? Your honor, you have to look at what the tags look like. You have to look at what the arcuate channel looked like. If we had a channel that was a perfect fit, with no play at all, to an arcuate probe, you could have asked the same question. You could have asked the question, well, the jury had that tag, and it was capable of not believing it. I'm saying that you have to look at the evidence, and you have to say, could a reasonable jury with this evidence have reached that conclusion? And I'm suggesting that even using their picture, I'm relying on their evidence. I'm not relying on our evidence. I think our evidence was kind of overwhelming, but I'm not relying on it. Did the jury have before it a sample of the actual- I believe it did. I believe it did. The record suggests they actually saw the tag body. It did, your honor. And I'm suggesting that for whatever reason, the jury went astray on that issue, and that all of their evidence does not lead to that conclusion. Now, let me, unless there are other questions on that, I'd like to go to the means for releasably preventing. The issue reduces itself- I do have a question on that. The picture on 16 displays, I take it the probe is the light colored device which has been inserted, correct? The light colored curved device is the probe. Right. That's correct. And so, your argument is that the channel, I take it, is defined by the outer edges of the tag. Plus the wall, which is about, it's the straight wall that is about a third of the way from the left margin, correct? If I understand what you mean by wall, your honor- Right. I'm talking about the straight wall that is between the two, the vertical wall. The vertical, that's the point of it. What else besides the outer edges of the tag plus the straight wall constitutes the arcuate channel? Your honor, you have on the left side of that picture, you have an outer surface and an inner vertical wall. That's one wall. Well, when you say an outer surface, when I'm talking about the wall, I'm talking about both the outer side of the wall and the inner side of the wall. So, the inner side of the wall defines a cavity within the tag. Now, what my question to you is, other than what we're calling the vertical wall, what is it within the cavity? Now, let's leave off the cavity itself, the walls of the cavity itself. But what else within the cavity, other than the vertical wall, defines this arcuate channel? Your honor, there are, first of all, there's a top to this which is not shown. The top is shown in our briefs. I understand that. Okay, so there are walls in the top as well. But on this side, there is one vertical wall curved on the left, one vertical wall to the right of that circular piece going down. The vertical wall, where again, aren't we talking about the walls of the tag itself, the outer walls of the tag itself? So, I wanted you to leave that out. So, I'm looking for, in other words, if there were no vertical wall there, then I think we'd all agree that simply a tag which has no structure in it, the outer walls don't define an arcuate channel within the tag. That's correct, your honor. Okay, so doesn't it come down to that vertical wall as defining the arcuate channel? Your honor, there are two vertical walls. One is inside. On the left, you see what looks like three walls together on the left side, and the innermost one of those three is a vertical wall. Then there's a round piece, and then there's another vertical wall. Now keep in mind, your honor, and then there's the outer wall itself. Keep in mind this is an arcuate probe. When you put an arcuate probe into this opening, and it's immediately constrained by that third wall to the left, there's a limit to where it can go. That third wall to the left really defines the opening, doesn't it? Well, your honor, but it's, no. You have to have an opening. Yes, but it's to the right of that opening, and it comes in further than the immediate opening. It comes in further, and you'll see it's almost touching the probe. How about the two shallow looking walls, one of which is immediately to the right of Judge Bryson's vertical wall, and the other one is to the right of that central device. Do those touch the probe? Your honor, I don't know. The brief may say it, I do not know. But my argument doesn't even need to rely on that. They may touch the probe, and I think the record would reflect that. Let me ask you this question, because your answer makes me think that you're saying that there's an arcuate channel. If an arcuate probe would, if inserted in the tag, hit the object here, such as, for example, the curved outer wall with no inner wall at all, that would constitute an arcuate channel. Would that be your position, if there were no vertical wall here? Your honor- If you did have no vertical wall, yeah, you might be able to use a straight pin or something to- And this is designed to avoid it. Right, right, I understand that. But still, a fixed arcuate probe would run along the edge of the tag, and would presumably still be able to hit the target, right? Your honor- Would that be an arcuate channel? Your honor, I could argue that, but I'm not, I don't need to argue that. And so, that's a closer question, obviously, because what you have then is an outer wall and space. We have more than that. We have an outer wall which is curved. We have an inner wall next to the opening, which constricts the arcuate probe in terms of where it can go. And then we have another vertical wall, which further constricts it. All right. I'm sure you appreciate the problem with the term channel. Your honor, I don't appreciate it, but perhaps you can edify me. Channel normally- Normally has- Your honor, I don't think, I don't remember that particular argument having been made by WG. And I would suggest that a channel does not require full walls. They wanted a description with that, where there were full walls. Or they didn't say the word continuous, but that's the effect of what they wanted. Judge Ward didn't give them that construction. I would say if you had a channel with openings, you would still have a channel. And if the openings were wider, you would still have a channel. If you have the limits of movement, you, I think you can reasonably call it a channel. Okay. Now I, see I've run out of my time. I haven't gotten to my means clause. Well, I think we have, we understand the argument on the means clause. I don't think we need any additional help on that. Okay. I'll save your, we'll save your full vote. Thank you, your honor. Well, let's see. I'm sorry. We have Mr. Waters. Sorry. Misplaced my cheat sheet. Mr. Waters, let's pick up where we left off with Mr. Dunner. Here's the problem that I have with your position. And that is that your tag is designed to operate either magnetically or with this probe. The sensor-matic probe, sensor-matic probe. And presumably your tag is designed so that when some relatively untrained clerk in a store who's got 15 people in line and is in a hurry to remove it, can shove that probe in to your tag and anticipate that the probe will hit the trigger that releases the pin, right? Absolutely. So your tag has to be designed internally to channel the probe so that 99 out of 100 times on the first push it goes through and hits the button. Why isn't that a significant description of exactly what the claim calls for? Well, actually that's not the way it works because what happens is there is a mechanical detacher. It's like a little gun. I think there is a picture in one of the briefs. And it has internal structure that specifically directs this probe that comes out and it keeps that probe exactly in line. The WG tag is designed... Does the gun attach to the tag? When the clerk hits the gun against the tag, does it attach in some way? You lay the tag inside it and you pull the trigger and it travels into the center of the tag. Okay. There are a picture in some of the briefs. But in this situation, it is the internal structure of the detacher that is guiding this probe and the problem with this patent isn't just that it requires an arcuate channel. An arcuate channel wouldn't have to have continuous walls according to our claim construction. However, there must be an arcuate structure that defines this arcuate channel that is capable of guiding the probe to the release mechanism. And that's not the case. Only if the... Why does it work in retail is because the detacher itself has internal structure that specifically puts it at the exact place it needs to go. The reference that Mr. Dunner made to the photo on page 16 is very revealing because on that picture itself, you see that Dr. Stamper has put a detacher probe. He's removed it from the detacher and he's got it inside the tag and it is being guided by the outside wall. And you see what happens. It misses the detacher. It doesn't hit it. So how can you hit it? Well, the detacher can provide the structure. But if that's the case, it's not the tag. So it's outside the patent. Or you could do it by hand if you slop it around and bang on it until you find the release mechanism. In my opinion, and I was the trial counsel, the most devastating part for Sensormatic was when their own expert, not Dr. Stamper, but their own expert says, well, look, I can move it around. I can slop it around and I can find it. Well, yeah, you sure can. And I asked him, well, isn't that just trial and error, slopping it around? He said, well, yeah. But the problem with that is that then you don't have a situation where you have structure that defines an arcuate channel that is guiding the probe. You have an open area. And if you stick it in and a man with common sense bangs it around, you will, at some point, find the detacher. And if you do it enough times, you'll get pretty good at doing it. Doesn't Judge Bryson's vertical wall guide the probe? Pardon? Judge Bryson's vertical wall. Look on page... The vertical wall we've been talking about there on page 16. Yes, I see the vertical wall. It's called in the patent, the blocking wall. It prevents a straight probe from going in. And we see that it doesn't. Here, you see where that wall is and the probe, it is guiding the probe in a sense that it can't go straight. However, does it guide it to the release mechanism? The answer is no, it doesn't. I also want to point out, just for clarity, and I don't think Mr. Dunner was trying to be misleading at all, but he refers to three walls on the left. There are not three walls on the left. The thing that he is seeing as the third one, the more inside one, that's not a wall at all. That is, if you notice, the probe is going over top of that. That's part of the bottom structure. Is that true of the other two pieces that look like bottom structure? That's just to provide rigidity to the tag? There are more on the left most. Those two are those are the structure that defines the opening. I'm talking about the two pieces that surround that central device, the central rotary device. That central rotary device is the three ball clutch mechanism and those are the There are two pieces vertical one on each side. Are those just strengthening for the frame? They don't guide the probe? They don't guide the probe. That is the piece that holds that cone in place that has the three balls in it. Well, what it looks like there is there is a cavity in the middle of the tag in which the three ball clutch is inserted. Is that right? That is correct. There are no upraised walls on the edge of that cavity. It's just that there is a surface and then there is a cavity and the three ball clutch fits in the cavity. Does this case sound to me like it comes down to a dispute which we see quite often within a claim construction dispute? It seems to me your definition of the channel is guiding the probe. You want to say guiding to the release mechanism. And Mr. Dunner it seems to me would like to say guiding, but it's just guiding anywhere along the channel and not necessarily to the release mechanism. That is how I understand Mr. Dunner's brief. And I know there is no appeal of the claim construction but the District Court's claim construction didn't specify which of those is the correct claim construction, right? That's correct, but the language is clear that the channel must be adapted to receive and guide an arcuate probe to said preventing means. And the phrase to said preventing means was not sought for construction by either side, but it's part of the claim. And I think the effect of what Mr. Dunner is doing is to try to remove that from the claim and say, hey look, if you guide it at all then you're guiding. Yeah, you're guiding. The outside wall will guide a probe but it will not guide it to release. If the arcuate channel doesn't guide it to the what are we calling it? Preventing means, right? Yes. If it doesn't guide it to the preventing means the thing won't work, right? It plainly has to be part of what the channel does. That is absolutely right. You must guide it to the release means and there is no structure in WG's tag to do so. WG's tag relies completely on the fact that the detacher has such a structure and if you are operating it with a hand probe it's not going to work unless you bang it around. You could perhaps make it work by brute force but there is not structure. It is an open structure inside the tag other than the walls that you see and that structure itself does not define an arcuate channel that will lead to the release means. In addition, Your Honor, this is a situation where there was compelling evidence there was testimony not just from Dr. Stamper but from their own expert and plus physical samples of the tags that were constructed by Sensormatic, I might point out. They were their samples that they entered into evidence had the top removed and a clear plastic piece applied on the top. These were sent back to the jury room along with a detacher a little detacher gun and they played with it at their leisure. I don't know how much they played with it but they were able to put their hands on this thing and say, hey does this thing have a channel that guides the probe to a release means or does it not? And if it's simply an open area that there could arguably be a channel along the exterior wall but it doesn't lead to the detaching means, then it's outside the claims. It may still work in the marketplace but is it an infringing tag? Is it within the confines of the patent? And that's the problem here. It is that the WG tag doesn't have an arguable channel that actually guides to the probe as required by the claims. I'm sorry, that actually guides to the release means. I said guides to the probe. In addition, there was considerable evidence that another element of the claim was missing and that being the means plus function phrase of releasably preventing the attaching means from being removed and the testimony there is clear from Dr. Stamper that this is not the case. The function is there but not the structure, which is a spring clamp and the structure, the probe-activated three-ball clutch that's in the WG article is simply not an equivalent because the way in which the release is achieved is so radically different. May I return for just a moment to the channel-path issue? Dr. Stamper and your opposing counsel cite this in the brief said something which struck me as perhaps a little odd given his position but he did say that when asked I think this was on Crust that isn't there a curved path or channel in the defendant's tags? And he says yes, there is. What's that all about? A curved path? A curved path or channel in your tags? Yes. Which I thought was contrary to the position that you were taking but then he comes back later in the same examination and he says in response to a question of whether the tag body has structure that defines the channel, he says no. So I take it that his position is there's a channel sort of in the air. Is that what he's saying? Because I found this a bit of a curious concept of a channel that isn't defined by structure. But his position seems to be yes, there's a channel but no, it isn't defined by structure. It's just sort of there in the abstract. Is that what you understand his testimony? I'm looking at 2051 to 2052. Yes, Your Honor. I think so. There's an infinite number of channels through the air and there's also specific channels if you look at the exterior wall. That would be considered a channel running along that wall. I just wouldn't think that there's a channel between you and me, for example. I wouldn't either. That's an odd use of the term. Don't you see that channel right there? Your own witness is... to say that there's an arcuate channel between you and me is even stranger. But there seems to me to be... It struck me as an odd thing for him to say. The claim construction says that an arcuate channel is just a curved path. And so there would be an infinite number of curved paths within this little tag. The question, though, where he differed from Sincermatic is there is no structure that defines a curved path that will guide a probe to the release means. It's capable of guiding it to the release means. If it's capable of guiding it but not to the right place, then it is outside the claim. And that's what we have here. Why doesn't capable of guiding it mean that it's not incapable of guiding it? That is to say, if it was incapable of guiding it, it would be obstructive. So why isn't any channel, however defined, capable of guiding it? Well, any channel would be capable of guiding. However, is it structure that defines a channel that's capable of guiding it to the release means? As we see here in this photograph that Mr. Donner referred to, you can guide and not get there, and yes, you have an arcuate channel, and yes, it guides, but it doesn't guide to where it needs to, so it's outside the claim. Part of the subtlety in all this language is, I take it he can, the trial judge, construed that means for guiding, not as a 12B means plus function. That is correct. But as a descriptive. Yes. Yes, indeed. That wasn't challenged? Well, the parties submitted differing views of some of these terms. I don't recall if that Claim drafter in this case had means IBIS. Indeed. Used the word means over and over and over again, something that isn't the smartest thing in the world to do, but that's the way it was written. Yes, and so I will submit to Your Honor that there is no clear error here. There's no error by Judge Ward. I mean, this entire argument about claim construction is now come about for the very first time in this appeal. It never objected, made any kind of objection at trial, never made an objection in JMOL, the conclusion of evidence, and even in the briefs, the written JMOL that renewed that came later, totally other arguments. And now for the very first time, you see these folks coming forth saying, hey, we think Dr. Stanford used the wrong claim construction in questions that we did with him. I mean, they asked him, on A-2086, is this just a question of whether or not the structure guides the probe? His answer, that is correct. Well, I didn't think the issue before us was claim construction. I thought the issue before us was whether there's substantial evidence in the record to support the jury verdict. I believe it is. Am I misinformed on that? No, you are correct, and there is substantial evidence. They're claiming, however, that if he used the wrong claim construction, that has to be disregarded in some way. But even if you completely, just from their own expert and the physical samples, there was substantial evidence to show non-infringement of this patent. I'm out of time unless you have a question for me. Well, I do have one question, which I was and let me just see if we have a brief response. I was a little surprised, actually, about your argument about the JMOL motion being insufficiently specific, because I think it's pretty typical for JMOLs at the close of the evidence, at the close of the plaintiff's evidence, at the close of all the evidence, to be as detailed as your argument suggests that it should have been here to it in order to avoid waiver. Do you have a Fifth Circuit case that actually requires the level of detail that you think should have been present in this case, which is to say, to go into a detailed argument about the evidentiary insufficiency here? I mean, I don't know if your experience is different from mine, but my experience is that the judge, the lawyers, everybody understands what the case is all about, and that by and large these JMOLs are pretty perfunctory in the way they're expressed, and if you get into any detail, you're going to get cut off, typically, by the judge. So if your experience is different, and if the Fifth Circuit requires more, can you point me to a case in which the Fifth Circuit has required more? The ones that we pointed out in the brief... I didn't see that this was required in any of the that kind of level of detail was required by any of those cases. I would refer, I think, to CP Interest, Inc. v. California Pools, and I don't think this is a situation where he was attempting to put a JMOL on the record, and Judge Ward was cutting him off. No, Judge Ward didn't cut him off, but he would have. Well, I think if he would have... Maybe he has an obligation to wait until Judge Ward says stop, but that's not been my experience, that the typical JMOL is not laid out with the kind of detail that you're suggesting was not only appropriate, but in fact constituted a waiver if you don't go into it. So my question is what authority do you have for that kind of waiver? None other than the case is cited, and if he had at any time objected that Dr. Stamper, during the trial, was veering off of claim construction... Ah, but that's a different issue. What you're saying is he's waived his entire insufficiency argument by not saying that all the facts that were before us are insufficient to show that there was an arcuate channel in the accused devices, right? If he even said that much, that would be way more than what he said here.  referred to the arcuate channel, or any testimony about Stamper, or anything that was While we're doing a little bit of commentary, which I support, let me just add a personal note. In your brief, you make some rather stringent attacks on your opponent's brief in some rather strong words. It seems to me that's really unnecessary in an appellate brief, and it doesn't go down to your favor in using that kind of language. If you want to point out specific instances of cropped quotes or misstatements, that's fine, but to have broad characterizations like that is not a good... It gives a bad flavor to an otherwise well-done piece of work. Well, thank you, Your Honor. It wasn't our intent to be particularly negative to Mr. Donner and his co-counsel. As you might guess, we've been working on this... Or anyone. We've been working with this a long time, and you can get worked up. And then you have to read through the draft and get unworked. The word desperately probably doesn't belong in an appellate brief unless it's the name of one of the parties. Okay. We'll hear a reply from Mr. Donner. First, I'd like to... Mr. Waters may have been right in terms of that third wall, but that doesn't really change my position. There's an entranceway with an opening, and there's that vertical wall to the right of that circular structure with a curved probe would limit where this could go. And I'd like to go to the testimony that you addressed, Judge Bryson, on A2050. The question was, based on the Court's definition, this is to their expert, in your opinion, isn't there a curved path or a channel in the defendant's tags? Yes, there is, and certainly it goes from the outside of the tag to the locking mechanism. Yes, it does. Now, in answer to the next page, he makes clear his position that it doesn't have the capacity, the structure doesn't have the capacity to guide. Let me go to that, Your Honor. Because the next page, I lost where you... I thought you were lying. A2052, lines 2 through... Well, actually, 2 through 17, but the critical passage is 2 through 8. Well, 2 through 6, he says, the structure doesn't define that channel, that curved path. But then he follows it with is there not a structure inside the defendant's tags that limit where the probes can go? Yes. There are walls that we looked at, posts, things of that nature. Yes. Once again, the claims don't call for how wide the channel could be. Correct? That is correct. But there's something inside that tag that limits where the probe could possibly go. That is correct. Now, the reason, if you read the rest of his testimony, you will see that his focus was on the release mechanism, that he didn't think it directed you to the release mechanism. And I think that's the interpretation of the language at the top of the page. And in answer to Judge Prost, we're not arguing that it doesn't have to go to the release mechanism. We're arguing that it doesn't have to be 100% perfect, that it has to be reasonably capable. And when you put this probe in their device, as shown by this structure, you will get to the promised land, and you can get there pretty much 100% of the time if you make any modest effort to get there. Well, I take it the evidence shows that in their system the detacher fits snugly onto the tag. Correct? That's correct. Right. And so the detacher has this curved probe that comes out of the detacher, once the detacher is in a particular angle and in a particular path defined by the relationship, the fixed now, relationship between the detacher and the tag. Correct? That's correct, Your Honor. Right. In which case you don't need any internal structure. I mean, they happen to have this wall there to prevent people from taking knitting needles into the store and opening things. But you don't need any structure in order to make this work. Your Honor, you don't need it if you use the detacher. Right. But that's not the issue. The issue is, without a detacher, is their structure capable of guiding the curved probe to the release mechanism? Even their expert, when he was cross-examined, said his test using the detacher, where he cut away the walls, it still worked. Sure it will work, but that's not the issue. The issue is without a detacher, because the claims don't call for the detacher. Some of the other claims do. Claim one doesn't. Without the detacher, are there walls that are reasonably capable I submit, the word reasonably is in there, of guiding it to the release mechanism? Guiding is the problem, I think. In other words, to take this may be a bit of a stretch, but we were talking about the arcuate channel between me and Mr. Waters, now between me and you, this channel that can be said to interrupt the universe of all channels between you and me, but it certainly seems to be a stretch to say that the bench guides the channel. Right? Your Honor, I don't think that's our situation. Well, I understand. And I know that's not a good answer to a question asked by a judge. That's where the argument is taking you, because you're saying that this wall is there, and preventing it, limiting in some way the path that the probe can take, but that doesn't seem to be necessary necessarily to establish guidance. Your Honor, it has to be I'm not saying, it has to be capable I don't know whether you're debating whether it, because of the detacher, there's a problem. All I'm saying is forget about the detacher. No, I'm forgetting about the detacher. I submit that this channel, notwithstanding the questions of Judge Plager, this channel will limit where this arcuate probe can go. Right, and this bench will limit the arcuate path between you and me. More than that, it will guide it because if you put a arcuate probe in this opening and just it will guide you. It will prevent you from going over here. It will get you very close. Hold on now. There are two little pieces in here you need to clarify for me. Their argument is that guide means guide to the button that releases the thing, the release mechanism. And their argument is that that probe gets there in your device or their device rather, because it is constrained by the detacher device. Now, let's do away with the detacher device and simply have a curved thing called a probe that you're holding in your hand. And you're saying that their device guides it. Now, does their device, as you understand it, a free probe, would that would their device guide that to the detacher or would it just in an abstract sense guide it in some way? To the release mechanism. I'm sorry. Your argument is that a freestanding probe pushed into their tag would be guided by the internals of their device to the release mechanism. Yes, I am saying that. I'm saying that exactly. And that a jury verdict to the contrary is just unsubstantial. And I'm saying there's no substantial evidence to support that verdict given the evidence they're relying on. They had a single test and we had 50 tests and those 50 tests all got to the release mechanism and all I'm saying is their argument is that the guide has to take you directly, exactly to the release mechanism without any help from anything else. And all I'm saying is the word capable of guiding to the release mechanism doesn't preclude the possibility that you may have to jiggle it a little to make sure you're exactly on it. You could be one millimeter off and they would say it doesn't infringe. Very well. Thank you. We will take a five minute recess for purposes of reconstituting. All rise. The Honorable Court will take a short recess. Mr. Donner, good to meet you. Good to meet you too. And I wasn't offended by any language in your brief. Well, I appreciate that. Mr. Vance, good to meet you. ... ... ... ... ... ... ... ... ...